IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2014

## CORNELIUS O. WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40801281      Michael R. Jones, Judge**

---

**No. M2013-01470-CCA-R3-PC - Filed June 11, 2014**

---

The petitioner, Cornelius O. Williams, appeals the denial of his petition for post-conviction relief. He alleges that he received ineffective assistance of counsel because his guilty plea was unlawfully induced and involuntarily made. After thoroughly reviewing the record, we conclude that the petitioner entered a knowing and voluntary plea of guilty and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and ROBERT W. WEDEMEYER, J., joined.

Chase T. Smith, Clarksville, Tennessee, for the appellant, Cornelius O. Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; John W. Carney, District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 24, 2009, the petitioner pleaded guilty to one count of rape of a child, a Class A felony, one count of aggravated sexual battery, a Class B felony, and two counts of especially aggravated sexual exploitation of a minor, Class B felonies. *State v. Cornelius O. Williams*, No. M2011-01169-CCA-R3-CD, 2012 WL 2061599, at *1 (Tenn. Crim. App. June 8, 2012). At the guilty plea hearing, the assistant district attorney general stated the facts of the case as follows:

> On May 28, 2008, Ginger Fitting of the Clarksville Police Department
> . . . [was] contacted by Lisa Dupruis (phonetic) at Our Kids[.]  [Ms.

Dupruis stated] that she received a phone call from the Chaplain on Ft. Campbell . . . that he had two individuals in this office that had a VHS tape. One individual was [*][1] the aunt of [Child One], and one was the mother of [Child One] and [*]. They had discovered a VHS tape among—at [the petitioner's] residence among his possessions. They viewed the VHS tape, titled "Storytelling," and that tape depicted [the petitioner] in the basement of the Defendant's address committing the sex acts as indicted upon [Child One] and [Child Two].

Ginger Fitting contacted the military and they began an investigation—[the petitioner], at this time had been deployed to Iraq. Special Agent James Carson and Special Agent Shelley Cave (phonetic), made contact with [the petitioner] there, interviewed him, searched his individual housing unit, found forty-one eight millimeter cassette tapes, in particular, number thirty-five that was in his possession there, was the same footage as [aunt] and [mother] discovered back in Clarksville.

Among his possessions, were three VHS tapes; one, entitled "Wrestlemania 20" [sic] contained on that VHS tape was the same footage as the eight millimeter tape number 35 and the storytelling VHS tape that was found in Clarksville.

When Special Agent Carson interviewed [the petitioner] specifically about the narrative that he was provided about the contents of the VHS tape contained here in Clarksville, he admitted to being in the basement with [Child One] and [Child Two] wearing a condom, having the girls position themselves over the arm of the couch and he got up behind them and they were—had only a t-shirt on and their bottom was exposed. Both children in the video take turns in this position. [Child One] is here, she is now fourteen and will testify that this took place probably when she was in the fifth grade, which is three years ago, making her definitely under thirteen years of age. She would testify that [the petitioner] penetrated her slightly in her anus.

*Id.* at *2.

---

[1]"[*] indicates that the court has removed proper names of individuals who bear an identifying relationship to the victim." *Williams*, 2012 WL 2061599, at *2 n. 1.

The trial court entered the judgments on October 7, 2009, and the petitioner was sentenced to an effective term of thirty-three years. On October 29, 2009, the petitioner filed a motion to withdraw his guilty pleas and the trial court issued an order denying this motion on April 13, 2010. On direct appeal, this court affirmed the denial of the motion. *Williams*, 2012 WL 2061599, at \*1. The petitioner also filed a pro se petition for post-conviction relief on November 6, 2009, which was stayed until the conclusion of the petitioner's appeal. An amended petition for post-conviction relief was filed on September 18, 2012, and on January 9, 2013, a second amended petition was filed, and the trial court conducted a hearing on the merits of the second petition.

At the post-conviction hearing, the trial court heard testimony from both trial counsel and the petitioner. Trial counsel testified that she had been an attorney for nine years and had served as a public defender in Montgomery County for six years. After being appointed to represent the petitioner, trial counsel provided him with a copy of the discovery in his case and reviewed the discovery with the petitioner. She stated that she met with the petitioner "something close to ten" times and that she reviewed the State's initial settlement agreement with him "numerous times." The State initially offered to allow the petitioner to plead guilty to two counts of aggravated sexual battery. At the time of this offer, trial counsel explained to the petitioner that she believed it would be in his best interest to accept an open guilty plea to two counts of aggravated sexual battery even though this plea would involve a prison sentence. Trial counsel was aware that the victim stated in her forensic interview that there was no penetration but trial counsel believed that the evidence on the videotape was likely sufficient to support a finding of penetration. Trial counsel also believed there was a possibility that the victim's testimony at trial would differ from her forensic interview because she would be older at the time of trial than she was when the video was produced. The petitioner responded that he was unwilling to accept any plea bargain that would require him to serve time in prison.

After the petitioner rejected the State's initial offer, trial counsel sent a letter to the petitioner where she listed the crimes that the petitioner was charged with, the potential sentence for each count, the evidence that would be used against the petitioner, and the burden of proof the State would have to meet in order to convict the petitioner as to each count. The State introduced this letter into evidence. In the letter, trial counsel informed the petitioner that he was facing a minimum sentence of two years and a maximum sentence of 146 years if he proceeded to trial. The letter also informed the petitioner that the State was willing to amend the charges of rape of a child to aggravated sexual battery, and while the petitioner would still be charged with two counts of especially aggravated sexual exploitation of a minor and two counts of sexual exploitation of a minor, the State would dismiss Counts 7 through 14 of the indictment and agree that the petitioner should receive a sentence of 16 to 40 years.

Trial counsel discussed the strengths and weaknesses of the State's case with the petitioner and reviewed the evidence that the State would use against him. Trial counsel informed the petitioner that police had a videotape of the petitioner with the two victims, both below the age of ten years old, in a sexual position wearing T-shirts, with the petitioner wearing boxer shorts that he eventually removed. Trial counsel watched this video once at the District Attorney's office and viewed it a second time with the petitioner. While viewing the tape with the petitioner, trial counsel also reviewed the transcript of the tape with the petitioner. She testified that this viewing occurred prior to trial conference at a settlement date and that it was "far before" the traditional two-week period between the trial conference and trial date. She believed that the petitioner had a clear indication of what the evidence was against him.

On the morning of the trial, the petitioner informed trial counsel that he had attempted to commit suicide the previous night. He mentioned the attempt to trial counsel as he was changing into his clothes for his appearance at trial. The petitioner had wrapped a bed sheet around his neck, tied one end to the post of his top bunk, and leapt off of the bunk. The petitioner only suffered "a little pain" from the attempt and the attempt was stopped after "a few seconds" by the night shift guards. After he was discovered by the guards, the petitioner was placed in a paper gown and put on suicide watch. Prior to this attempt, the petitioner had conveyed to trial counsel through letters that he was planning to attempt suicide and trial counsel subsequently had him placed on suicide watch in the jail. The petitioner was later removed from suicide watch at his own request.

Trial counsel also learned on the morning of trial that one of the victims was going to testify that there had been slight penetration during the incident with the defendant. In her initial statement, the victim conveyed that no penetration occurred. Trial counsel informed the petitioner what the victim would testify to and as the jury was about to be brought into the courtroom the petitioner "was sort of wa[]vering and didn't want to . . . go through with the trial." He informed trial counsel that he did not want a trial and wished to settle the case. Trial counsel approached the State and received an offer to allow the petitioner to plead guilty to rape of a child and receive a twenty-five year sentence, along with a guilty plea to the charge of aggravated sexual battery.

Trial counsel testified that the petitioner signed the plea agreement documents after she explained the ramifications of entering an open plea and informed the petitioner that the trial court would determine whether his sentences would be served consecutively or concurrently. The trial court then conducted a guilty plea colloquy. The petitioner never expressed any reservations to trial counsel during this process, answered questions appropriately, and never indicated to trial counsel that he did not wish to plead guilty.

The petitioner was an Army veteran, and trial counsel researched his service records. Through her research, trial counsel did not find anything unusual contained in his service records, and the records contained no mention of any prior suicide attempts. Trial counsel considered having the petitioner evaluated but ultimately decided against the evaluation. She did not seek a continuance on the day of trial after learning of the petitioner's suicide attempt because she did not believe that the grounds existed and because "[h]onestly, [the petitioner] never asked" for a continuance. Trial counsel spoke with the petitioner and observed that "he seemed completely fine, he had no marks on him whatsoever, was given no medication that night and even expressed that he wanted to enter a guilty plea and went through all of [the trial judge's] questions during the guilty plea." Trial counsel recognized that while it was "somewhat unusual" not to have the petitioner evaluated, she saw no indications in his jail or Army records that an evaluation was necessary. The petitioner did not complain about his "demeanor, behavior or him being impaired [] to go forward," and the petitioner was able to understand the questions trial counsel asked him and to provided appropriate answers to the questions.

The petitioner testified that he conveyed his thoughts of suicide to trial counsel via letters. He only conveyed these thoughts in letters because whenever he spoke with trial counsel he "was just upset from what she was saying to me and it was really nothing really to talk about." The defendant recalled an incident where he was in Fort Polk, Louisiana, on a training mission and he told two other soldiers that he was planning to commit suicide. One soldier later reported these statements to the platoon sergeant, who took the petitioner to the hospital that evening. The petitioner stated that he was told that the incident would not be placed in his file and that he did not believe the incident was reported in his file. He thought that "it should be in there," but admitted that he did not have a copy of the report and that if it ever existed, it should be in his file. He testified that he told trial counsel about the incident.

The petitioner confirmed that he met with trial counsel "quite a few times" and that their conversations were primarily about reaching a plea agreement with the State. He testified that trial counsel informed him what evidence the State would use against him and testified that he was aware of what the charges carried. He agreed that he received a copy of the discovery in his case and confirmed that he watched the video with trial counsel. The petitioner stated that on the day of the trial, trial counsel informed him who would be in the courtroom and that trial counsel told him "there was nothing she could do for me," because the victim was going to testify that the petitioner penetrated her. The petitioner felt that he had no choice but to ask trial counsel to try and elicit a plea offer from the State.

The petitioner testified that he initially did not understand the length of the sentence he was agreeing to and that he did not understand what "pleading open" and the terms

"consecutively and concurrently" entailed. He initially testified that he never saw the letter from trial counsel detailing the potential charges and sentences he faced if he proceeded to trial but later admitted that he had viewed the letter. At the time he entered his guilty plea, the petitioner never stated that he did not wish to enter the plea.

The State recalled trial counsel as a rebuttal witness, and she testified that the petitioner never informed her of the incident in Fort Polk, nor did she find any record of the incident in any of the records to which she had access. She also testified that she never told the petitioner "that there was no hope" on the morning of the scheduled trial and that she was fully prepared to go to trial on that date. She described her letter to the petitioner as "a follow up of numerous interviews . . . and numerous jail visits" that she had with the petitioner. She advised the petitioner of the penalties he was facing when she visited him in jail. Trial counsel agreed that the inconsistent statements of the victim between her forensic interview and potential trial testimony would be an issue for the jury to determine as to whether penetration actually occurred. However, she testified that the videotape and the transcript of the videotape served as corroboration of the victim's statement and that she could identify the petitioner in the video. Trial counsel confirmed that the petitioner received the transcript of the videotape and that the transcript indicated that the petitioner had stated, "I am not going to stick it all the way in."

The post-conviction court found that the petitioner had the right to proceed with a trial and opted not to exercise that right. The court noted that the petitioner was presented with video evidence of the offense and that the State would have used the video, the transcript, and the testimony of the victim to make its case against the petitioner. The court also observed that the petitioner could have used in his defense the inconsistent statement of the victim and medical testimony indicating that the victim suffered no unusual tears. The post-conviction court accredited trial counsel as an experienced trial attorney who would know that medical personnel would testify that a lack of evidence did not mean that the rape did not occur. The court determined that the petitioner could have elected to face his accusers but chose not to do so. The court found that the petitioner failed to prove that trial counsel provided ineffective representation and denied the petition for post-conviction relief.

## ANALYSIS

The petitioner contends that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, he argues that he believed he had no option but to plead guilty after trial counsel informed him there was nothing she could do and that his guilty plea was coerced because pressure was exerted on him the day of trial after he had recently attempted to commit suicide.

To obtain post-conviction relief, the petitioner must demonstrate that "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2010). The petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State* , 202 S.W.3d 106, 115 (Tenn. 2006). This court may not substitute its own inferences for those drawn by the post-conviction court, as questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 455 (Tenn. 2001); *State v. Burns*, 6 S.W.3d at 461. The trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). In evaluating whether a guilty plea was knowingly and voluntarily entered, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A reviewing court must make this determination "based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1996). A court charged with determining the nature of a guilty plea:

> must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). "Where, as here, a defendant is

represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. In the context of a guilty plea, to satisfy the prejudice facet of *Strickland* the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The petitioner essentially asks this court to re-weigh the evidence and reassess the credibility of the witnesses, as he argues that the trial court erred in crediting the testimony of trial counsel over that of the petitioner. The petitioner testified that he entered his guilty plea based upon the "bleak picture painted by trial counsel" after she told him that there was nothing she could do for him. Trial counsel testified that she was ready to proceed to trial and that she never told the petitioner that there was "no hope" for him. She testified that it was the petitioner who proposed entering a plea and that he never expressed any reservations about entering the plea to either trial counsel or the trial court.

The testimony of the petitioner and trial counsel conflicted, and by its findings, the post-conviction court implicitly credited the testimony of trial counsel over the petitioner. Accordingly, we conclude that the record does not preponderate against the determination

that trial counsel's performance did not fall outside the range of competence demanded of attorneys in criminal cases. Because we conclude that trial counsel's representation was not deficient, we need not consider the prejudice prong of the *Strickland* analysis. *See Goad*, 938 S.W.2d at 370. Therefore, the petitioner is not entitled to any relief on this claim.

The petitioner also contends that his plea was coerced "due to the pressure exerted on him the day of trial in close proximity to a recent suicide attempt." However, on direct appeal, this court addressed the effect that the petitioner's suicide attempt had on his guilty pleas and concluded that the pleas were knowingly, voluntarily, and intelligently entered. *Williams*, 2012 WL 2061599, at *9 ("Nothing in the record indicates that appellant's alleged 'suicide attempt' was anything more than a last minute ploy to avoid the inevitability of a trial. . . . Faced with [the reality of a trial], appellant initiated further plea negotiations on the morning of trial. We conclude that appellant made a knowing, voluntary, and intelligent decision to forgo the formalities of a trial and to accept a favorable plea agreement."). As this court has previously determined that the guilty pleas were voluntary, we need not address the merits of the petitioner's claim. *See State v. Jefferson*, 31 S.W.3d 558, 561 (Tenn. 2000) ("[I]ssues previously litigated and decided by a court of competent jurisdiction . . . need not be revisited.") (quoting *Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998)). Accordingly, we conclude that the petitioner is entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE